Miller *v.* The Steam Navigation Company.

---

## Miller *vs.* The Steam Navigation Company.

Goods belonging to the plaintiff were received at the city of New-York by the defendants, who were common carriers on the Hudson river between Albany and New-York, to be carried by them to Albany and there delivered to A., the agent of a line of boat in the Erie canal. The goods were put on board a barge of the defendants, at New-York, and taken to Albany, where they arrived on the morning of the 17th of August, 1848. A portion of them were unloaded from the barge, and put into a float in the Albany basin, belonging to the defendants, which was a stationary floating craft, kept for the purpose of receiving goods brought up the river, and from which goods were reshipped into canal boats to be taken west. While the goods were in the process of being passed from the barge to the float, and before they were delivered to A., they, together with the barge and float, were destroyed by a fire which originated in the city of Albany, and afterwards spread to the piers and shipping. *Held,* that the defendants, having contracted to deliver the goods to A. at Albany, they continued to hold the relation of *common carriers* until the goods were so delivered, or until a reasonable time

should have elapsed after notice to A. of their arrival, and an offer to deliver; and that they were liable for the value.

*Held also,* that the defendants were not to be treated as *warehousemen* of the goods, after the arrival of the barge at the pier at Albany. That they had no right to warehouse the goods, except in case of the absence of A., or his refusal or neglect to receive them, after notice.

*Held further,* that it was not such a case of inevitable accident as to excuse the carriers from their common law liability for the loss of the goods.

ACTION against the appellants as common carriers, to recover the value of a quantity of merchandise belonging to the respondent. The goods in question were received by the appellants at the city of New-York, on the 14th and 15th days of August, 1848, to be carried by them to the city of Albany, and there delivered to one Adams, the agent, at the latter place, of the Rochester City Line of canal boats. The goods were put on board a barge of the appellants at the city of New-York, and taken to Albany, where they arrived on the morning of the 17th day of August, and were destroyed by fire on that day, while in the possession of the appellants. The other facts sufficiently appear in the opinion of the court. The respondent recovered at the circuit, a judgment for the value of the goods; from which judgment the appellants appealed to the general term.

*Geo. H. Mumford,* for the appellants.

*H. Humphrey,* for the respondent.

*By the Court,* WELLES, J. The position of the counsel for the appellants, that the loss of the goods was occasioned by the act of God, or more properly speaking, by inevitable accident, cannot be sustained. This point was considered in the preceding case of *Parsons* v. *Monteath,* (*ante,* p. 353,) which was a case of the destruction of goods at Albany by the same fire that produced the loss in this case. We there held that it was not such a case of inevitable accident as to excuse the carrier from his common law liability for the loss of the goods. It is unnecessary to repeat the considerations which led us to that conclusion.

Miller *v.* The Steam Navigation Company.

It is not disputed that the appellants were common carriers of the goods on the North river between New-York and Albany, nor that the goods in question were, on the 14th and 15th days of August, 1848, received by them, as such, at New-York, to be transported to Albany and there delivered to F. M. Adams, the agent, at the latter place, of the Rochester City Line of canal boats. The goods were taken up the river by the appellants' barge Superior, to Albany, where they arrived early in the morning of the 17th of the same month, and were destroyed by the great fire which occurred there on that day. Before they were destroyed, a portion of them were unloaded from the barge and put into a float in the Albany basin, belonging to the defendants, which was a stationary floating craft, kept for the purpose of receiving goods brought up the river, with different apartments for the different transportation lines west. It had been there for several years, and the custom was to discharge goods brought up the river, into it, from which the goods were reshipped into canal boats, to be taken west, the canal boats coming alongside of the float and receiving their cargoes immediately from the float.

It is contended, on behalf of the appellants, that upon the arrival of the barge at the pier at Albany, their relation became changed from common carriers, to that of warehousemen of the goods in question, and that as there is no negligence imputed to them, and as warehousemen are only liable in case of negligence, no recovery can be had against them.

The contract of shipment was to deliver the goods to F. M. Adams, the agent, at Albany, of the Rochester City Line, which line the respondent had selected for their transportation west of Albany; and, in my judgment, the appellants continued to hold the relation of common carriers in reference to the goods, until they were so delivered, or until a reasonable time should have elapsed after notice to the agent of their arrival, and an offer to deliver. We so ruled on a similar question in the case of *Goold and others* v. *Chapin & Mallory*, (10 *Barb.* 612.)

The appellants had no right to warehouse the goods, unless in case of the absence of the person authorized to receive them,

or his refusal or neglect to receive them, after reasonable notice. If the contract was to deliver them to Adams, they had no more right to store them at Albany than at New-York, or any intermediate point on the river, unless for one of the reasons mentioned. The legal obligations and liabilities of the appellants as common carriers, were fastened upon them from the time they received the goods in New-York, until they had performed the service which the transaction implied, and delivered them agreeably to their contract, unless prevented by the conduct of the owner or his agents.

There does not appear to have been any notice given to Adams of the arrival of the goods : no offer to deliver them to him : no act on the part of the appellants, indicating that they desired or intended to change their character from common carriers to that of warehousemen. Adams went on board the barge some two or three hours after its arrival, and saw the trip book. He testifies that he had a boat near by, ready to take the goods from the float, upon which, as appears by the testimony of the captain of the barge, it was the invariable custom of the defendants to ship goods brought by them up the river, before they were delivered on board the canal boats. The goods in question were in the process of being passed from the barge to the float, and before it was completed, and while a portion of them was in the float and the residue in the barge, the fire drove away the hands engaged, and destroyed both the barge and float, with all the goods they contained.

Under these circumstances, it is preposterous to contend that there was any thing like an attempt or intention to store the goods ; or any occasion or justification for storing them, if such had been the intention. On the contrary, the appellants were merely preparing and getting ready to deliver them, but had not commenced the delivery. They were not in fact ready or in a situation to commence the delivery. The goods were still in their possession as common carriers, to all intents and purposes.

It is unnecessary to inquire whether the float mentioned could in any event be regarded a warehouse. If it were material, I should have no hesitation in saying it was not ; as we also held

in relation to a similar craft in the case of *Goold and others v. Chapin & Mallory.* It is of no consequence what it was called. We perceive what was its character and design, and the use to which it was applied; and we cannot fail to see that it was not a warehouse, in any proper or legal sense of the term. The judgment of the special term should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, June 3, 1851. *Welles, Selden* and *Johnson,* Justices.